WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Carla M. LaCombe, Individually)   No. CV 06-2037-PHX-RCB
and as Administrator for the)
Estate of David Nichols,)          **O R D E R**
deceased; Donald A. Nichols,)
father of David Nichols; Nancy)
Nichols, mother of David)
Nichols,,                        )
                                 )
          Plaintiffs,            )
                                 )
vs.                              )
                                 )
                                 )
Bullhead City Hospital Corp., a)
Tennessee corporation doing)
business in Arizona as Western)
Arizona Regional Medical)
Center,                          )
                                 )
          Defendant.             )
                                 )
_____)

The following motions are currently pending before the

court: (1) plaintiff's "Amended Motion to Consolidate[]" (doc.

24); (2) a "Motion to Enforce Agreement to Dismiss" (doc. 25) by

defendant Bullhead City Hospital, a Tennessee corporation doing

business in Arizona as Western Arizona Regional Medical Center

("WARMC"); and (3) defendant WARMC's "Motion to Dismiss

Plaintiff's Second Amended Complaint" (doc. 41).  If defendant

prevails on its motion to dismiss, obviously the other two

motions would be rendered moot.  Therefore, although filed
subsequent to the motions to consolidate and to enforce, the
court will first address the motion to dismiss.  Then, if need
be, the court will go on to consider the motions to enforce and
to consolidate.

### *Background*

The court assumes familiarity with the rather convoluted
procedural history of this action and its related state and
federal court actions.  A few aspects of that history bear
repeating though as they place the pending motions in context.
"This medical malpractice action is one of three which plaintiffs
filed arising out of the death of David Nichols."  Lacombe v.
Bullhead City Hospital Corp., 2007 WL 2702005, at *1 (D.Ariz.
Sept. 12, 2007) (footnote omitted) ("Lacombe I").  Allegedly "Mr.
Nichols' death was due to the administration of a broad spectrum
antibiotic which is in the same general class as penicillin."
Id. (Internal quotation marks and citation omitted).  Mr. Nichols
purportedly "had a known allergy to penicillin."  Id. (internal
quotation marks and citation omitted).

Plaintiffs filed their first action in Nevada state court on
July 11, 2006, naming as defendants a host of health care
providers and entities.  "Plaintiffs' filed this second action,
on August 21, 2006, against substantially all of the defendants
whom they named in the original state court action."  Id. at *1
n. 1. On September 1, 2006, plaintiffs filed a second federal
court action naming as a defendant, among others, Mark E. Luce,
M.D.  That second federal court action was necessitated by
plaintiffs' "inadvertent[]" failure to originally name Dr. Luce

1  as a defendant in this action.[1]  WARMC's Reply (doc. 32),  exh. A

2  (doc. 32-2) thereto at 3.

3       As a result of either motion practice or voluntary

4  dismissal, WARMC is the only remaining defendant in this action,

5  as the second amended complaint ("the complaint") reflects.

6  WARMC promptly moved for dismissal of that complaint on several

7  grounds – failure to properly plead diversity jurisdiction;

8  failure to join indispensable parties; and impermissibly stating

9  a "sum certain ($2,000,000) as damages in violation of Arizona

10 rules."  Mot. (doc. 41) at 2.  In its Reply, WARMC explicitly

11 withdrew its objections pertaining to alleged lack of diversity.

12 Reply (doc. 43) at 1-2.  The court will, accordingly, limit its

13 analysis to the indispensable party issue and the pleading of a

14 sum certain.

15                            ***Discussion***

16 ***I.  Dismissal***

17       ***A.  Fed. R. Civ. P. 19***

18       Pursuant to Fed. R. Civ. P. 12(b)(7), WARMC is moving to

19 dismiss the complaint for "failure to join a party under Rule

20 19."  Rule 19, in turn, governs "joinder of persons needed for

21 just adjudication."  "A [R]ule 12(b)(7) motion to dismiss for

22 failure to join a party will be granted *only if* the court

23 determines: (1) joinder of the party is not possible, *and* (2) the

24 party is 'indispensable.'"  Brosnahan v. Pozgay, 2007 WL 173969,

25 at *2 (S.D.Cal. Jan. 17, 2007) (citing Shermoen v. United States,

26

27       [1]       Evidently yet a third federal court action was filed against Dr. Luce

28 in Nevada.   Mot. (doc. 41) at 5, n.4;  see also Def. Luce Resp. Mot. to
Consolidate (doc. 28) at 3-4, n.1.

1   982 F.2d 1312, 1317 (9th Cir. 1992)) (emphasis added).  The

2   moving party "bear[s] the burden [of] producing evidence in

3   support of the motion." <u>Mintel Learning Technology v. Beijing</u>

4   <u>Kaidi Education</u>, 2007 WL 2288329, at *13 (N.D.Cal. Aug. 9, 2007)

5   (citation omitted); <u>see also</u> <u>Brosnahan</u>, 2007 WL 173969, at *2

6   (internal quotation marks and citation omitted) ("The moving

7   party [on a Rule 12(b)(7) motion] has the burden of persuasion in

8   arguing for dismissal.") As more fully discussed below, WARMC has

9   not met this burden.

10       Rule 19 provides "[t]he framework for determining whether a

11  party is necessary and indispensable[.]" <u>American Greyhound</u>

12  <u>Racing, Inc. v. Hull</u>, 305 F.3d 1015, 1022 (9th Cir. 2002). "Rule

13  19(b), . . . , distinguishes between necessary and indispensable

14  parties." <u>Merrill Lynch, Pierce, Fenner & Smith v. ENC Corp.</u>,

15  464 F.3d 885, 891 (9th Cir. 2006), <u>cert.</u> <u>granted</u>, 2007 WL 682016

16  (U.S. Dec. 3, 2007).  Thus, "[t]he proper approach" under Rule 19

17  "is first to decide whether the [absent parties] are, in the

18  traditional terminology, 'necessary' parties who should normally

19  be joined under the standards of Rule 19(a)." <u>American Greyhound</u>

20  <u>Racing</u>, 305 F.3d at 1022.  If the absent party is not deemed

21  "necessary" for Rule 19 purposes, that ends the inquiry.  <u>See</u>

22  <u>Hendricks v. Bank of America, N.A.</u>, 408 F.3d 1127, 1136 (9th Cir.

23  2005) (internal quotation marks and citation omitted) ("Having

24  rejected Mutual's challenge to the district court's necessary

25  party analysis, we need not decide whether in equity and good

26  conscience  Mutual qualifies as an indispensable party under Rule

27  19(b).")

28

On the other hand, if the absent parties "are necessary parties, the . . . court must then determine whether [they] are 'indispensable'' that is, 'whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed." American Greyhound Racing, 305 F.3d at 1022 (internal quotation marks and citations omitted).  This equitable determination is based upon a "variety of factors[.]" Hendricks, 408 F.3d at 1136.  Those factors include:  prejudice to existing parties; the extent to which such prejudice can be "lessened or avoided;" the adequacy of the judgment in the person's absence; and "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Id. (quoting Fed. R. Civ. P. 19(b)).  The Ninth Circuit has cautioned that "Rule 19's necessary and indispensable party 'inquiry is a practical, fact-specific one, designed to avoid the harsh results of rigid application." Id. (internal quotation marks and citation omitted).

### 1.  Necessary Party

A party is "necessary" within the meaning of Rule 19 if "(1) in [its] absence complete relief cannot be afforded among those already parties, or (2) [it] claims an interest relating to the subject of the action and is so situated that the disposition of the action in [its] absence may (i) as a practical matter impair or impede [its] ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring . . . inconsistent obligations." Fed. R. Civ. P. 19(a) (emphasis added).  If the absent parties fall into either of these "alternative" categories, they are "necessary to the

instant litigation[,]" and the analysis shifts to
indispensability.  See Dawavendewa v. Salt River Project
Agricultural Improvement and Power District, 276 F.3d 1150, 1155
(9th Cir. 2002) (citation omitted).

### a.  Complete Relief

WARMC focuses exclusively on the first factor under Rule
19(a), arguing that complete relief cannot be afforded without
"the other healthcare providers[,]" i.e. the defendants in the
Nevada state court action.  Mot. (doc. 41) at 5.  WARMC posits
that if those providers are not parties to this action, there is
a "substantial risk" that it will "incur[] more than its share of
damages because the case would proceed against WARMC only in this
Court and in Nevada state court against all of the health
providers."  Id. (citing Fed. R. Civ. P. 19).  WARMC further
posits that because under "Arizona's comparative negligence law,
each tortfeasor is only liable for that defendant's relative
degree of fault[,] . . . complete relief is not possible" without
the presence of the Nevada defendants.  Reply (doc. 16) at 6.[2]
As will be discussed more fully below, in making this argument,
WARMC fails to take into account Arizona's entire comparative
negligence statutory scheme.

Plaintiffs counter that "WARMC is free to allege that" the
Nevada defendants "are non-parties at fault[,]" which will
"ensure[] that WARMC only incurs its share of damages."  Resp.
(doc. 42) at 4.  Although unstated, evidently it is plaintiff's
position that in light of the foregoing, the Nevada defendants

---

[2]     WARMC specifically incorporated this argument from its prior motion
to dismiss.  See Mot. (doc. 41) at 5.

1  are not necessary parties to this litigation.  Hence, the court

2  should deny WARMC's motion to dismiss for failure to join those

3  defendants in the present action.

4      In its Reply, WARMC did not respond to plaintiffs' non-party

5  at fault argument.  Instead, analyzing the indispensability

6  element of Rule 19(b), WARMC addressed the equitable factors

7  enumerated therein.  Of course, as noted earlier, unless WARMC

8  can show that the Nevada defendants are "necessary" parties, the

9  indispensability element falls by the wayside.

10     WARMC's argument that "complete, fair and equitable [relief]

11  cannot be fashioned[]"[3] in the absence of the Nevada tortfeasors

12  ignores the fact that "'[it] has long been the rule that it is

13  not necessary for all joint tortfeasors to be named as defendants

14  in a single lawsuit.'" Mintel Learning, 2007 WL 2288329, at *13

15  (quoting Temple v. Synthes Corp. Ltd., 498 U.S. 5, 7 (1990)).

16  Indeed, "'[t]he Advisory Committee Notes to Rule 19(a) explicitly

17  state that 'a tortfeasor with the usual 'joint-and-several'

18  liability is merely a permissive party to an action against

19  another with like liability.'" Id. (quoting Temple, 498 U.S. at

20  7).  Accordingly, "[b]ecause the liability of joint tortfeasors

21  is both joint and several, a plaintiff can sue one without suing

22  the others, and the court can afford a plaintiff complete relief

23  in the absence of all the joint tortfeasors in the same lawsuit."

24  Id.  The foregoing completely erodes WARMC's theory that complete

25  relief cannot be afforded here in the absence of the Nevada

26  tortfeasors.

27  _____

28     [3]    Reply (doc. 43) at 3.

1    Arizona's "Uniform Contribution Among Tortfeasors Act

2 ("UCATA"), A.R.S. § 12-2501 *et seq.*,[4] further undermines WARMC's

3 theory that the Nevada tortfeasors are necessary parties to this

4 action.   As WARMC correctly notes, under the UCATA, "the

5 liability of tortfeasors is several and each defendant is liable

6 only for the amount of damages  allocated to that defendant in

7 direct proportion to that defendant's percentage of fault."

8 Pooley v. National Hole-In-One Association, 89 F.Supp.2d 1108,

9 1114 (D.Ariz. 2000) (citing A.R.S. § 12-2506(A) (West 2000)).  By

10 the same token though, the UCATA unequivocally states that "[i]n

11 assessing percentages of fault the trier of fact *shall* consider

12 the fault of all persons who contributed to the alleged injury,

13 [or] death . . . , *regardless of whether the person was, or could*

14 *have been named as a party* to the suit." A.R.S. § 12-2506(B)

15 (West 2003) (emphasis added).  It is this aspect of the UCATA

16 which WARMC does not address.

17    In accordance with the UCATA, a jury in the present case

18 must necessarily consider the "fault" of the other healthcare

19 providers involved in Mr. Nichols' medical care during the

20 relevant time frame.  Therefore, although WARMC contends

21 otherwise, complete relief can be "accorded among those already

22 parties[]"[5] to this action.  See Bremenkamp v. Beverly

23 Enterprises-Kansas, Inc., 1989 WL 103643, at *2 (D.Kan. 1989)

24 (citation omitted) (finding Rule 19(a)(1) "inapplicable" because

25

26    [4]    In this diversity jurisdiction case, the court applies "state
substantive law, but . . . federal procedural law." See Nitco Holding Corp. v.
27 Boujikian, 491 F.3d 1086, 1089 (9th Cir. 2007) (citation omitted).

28    [5]    Fed. R. Civ. P. 19(a)(1).

1  "complete relief could be accorded among those already parties"

2  in that "under . . . Kansas['] comparative negligence statute, in

3  determining [defendant's] negligence the court may take into

4  account the negligence of non-parties such as the three

5  physicians and [the] Medical Center[]").  In reaching this

6  conclusion, the court also finds significant the fact that even

7  though plaintiffs have elected to proceed solely against WARMC in

8  this action, that does not preclude WARMC from pursuing its

9  statutory rights of contribution, if ultimately applicable.  <u>See</u>

10 A.R.S. §§ 12-501 – 12-503 (West 2003).

11     As mentioned at the outset, WARMC's Rule 19(a)(1) analysis

12 is limited to the issue of whether complete relief can "be

13 afforded among those already parties[.]" <u>See</u> Fed. R. Civ. P.

14 19(a)(1).  The court has similarly limited its analysis.

15 However, WARMC has also raised the specter of prejudice if a

16 "judgment [is] rendered [herein] in the absence of the[] [Nevada]

17 tortfeasors[.]" Reply (doc. 43) at 3.  The court thus is

18 compelled to observe that in part because of the mechanisms

19 available to WARMC under the UCATC, there is not "a substantial

20 risk of [WARMC] incurring . . . inconsistent obligations" if the

21 Nevada defendants are not joined in this action.  <u>See</u> Fed. R.

22 Civ. P. 19(a)(1).  In sum, WARMC has not met its burden of

23 showing that the Nevada tortfeasors are necessary parties within

24 the meaning of Rule 19(a)(1).

25              ***2.  Indispensable Party***

26     Because the court has found that WARMC is not a necessary

27 party for Rule 19 purposes, that ends the analysis.  The court

28 therefore must deny WARMC's motion to dismiss for failure to join

1    a party under Rule 19.  See <u>Mintel Learning</u>, 2007 WL 2288329, at

2    *13 – *14 (denying motion to dismiss for failure to join an

3    indispensable party where defendants did not establish that the

4    absent person was "necessary" under Rule 19(a)(1)).

5        ***B.  Pleading a "Sum Certain"***

6        WARMC accurately notes that Arizona Rule of Civil Procedure

7    8(g) prohibits pleading "dollar amount[s] or figure[s] for

8    damages[,]" except where a party is seeking a "sum certain[.]"

9    ARCP 8(g).  WARMC contends that because plaintiffs expressly

10   allege in their complaint that "the amount in controversy is

11   $2,000,000.00[,]" they have violated that state court rule.  <u>See</u>

12   Co. (doc. 40) at 1, ¶ 1.  WARMC further contends that it has been

13   prejudiced by the fact that plaintiffs have alleged damages in a

14   specific dollar amount.  The court is construing this as an

15   additional bases for dismissal, even though WARMC did not

16   explicitly move for dismissal on this basis.

17       Perhaps WARMC is not specifically moving for dismissal on

18   this basis because it realizes the futility of proceeding on that

19   theory.  "'Under the doctrine of <u>Erie R.R. v. Tompkins</u>, 304 U.S.

20   64, . . . (1938), a federal court sitting in diversity must apply

21   the Federal Rules of Civil Procedure.'" <u>Harris Technical Sales,</u>

22   <u>Inc. v. Eagle Test Systems, Inc.</u>, 2007 WL 1888865, at *1 (D.Ariz.

23   June 29, 2007) (quoting <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1073 (9th

24   Cir. 2005)).  What is more, "for the purposes of <u>Erie</u>, pleading

25   standards are considered procedural." <u>Id.</u> at *3 (internal

26   quotation marks and citation omitted).  Additionally, "where

27   state law directly conflicts with applicable rules of the Federal

28   Rules of Civil Procedure, federal courts *must* apply the Federal

1  Rules- not state law."  Id. (internal quotation marks and

2  citations omitted) (emphasis added).  As should be abundantly

3  clear by now, Arizona's pleading requirements simply have no

4  place in this federal court litigation.  So, to the extent

5  WARMC's motion can be read as arguing that dismissal is mandated

6  due to a violation of an Arizona state court pleading

7  requirement, this argument is without merit.   Thus, the court

8  denies in its entirety WARMC's motion to dismiss plaintiffs'

9  complaint.

10  ***II.  Motion to Enforce Agreement to Dismiss***

11      Having denied WARMC's motion to dismiss, the court must next

12  consider WARMC's motion to enforce a claimed agreement between it

13  and plaintiffs.  WARMC vigorously contends that on February 20,

14  2007, it agreed with plaintiffs that they would dismiss this

15  action as against WARMC in exchange for WARMC submitting to

16  jurisdiction in the Nevada state court action.  See WARMC's Mot.

17  to Enforce Agreement to Dismiss (doc. 25), exh. A thereto (Aff.

18  of Mary C. Brooksby (April 19, 2007)) at 8-9, ¶¶ 3-6.  WARMC's

19  Arizona counsel, Ms. Brooksby, recalls that "[o]ther than

20  submission to personal jurisdiction in Nevada, there were no

21  contingencies[]" to the purported agreement.  Id. at 9, ¶ 5.

22  Contingencies were added after that initial conversation,

23  however, according to Ms. Brooksby.  In particular, during the

24  February 26, 2007, scheduling conference, WARMC claims that

25  plaintiffs' Arizona counsel, Mr. Wright, added the contingency of

26  "approval of Plaintiff's [sic] Nevada counsel and his client."

27  Id. at 9, ¶ 7.  A few days later, WARMC claims that Mr. Wright

28  added another contingency, "hing[ing] his offer on Dr. Luce's

1   agreement to submit to Nevada jurisdiction." <u>Id.</u> at 2, ¶ 8.

2   Plaintiffs allegedly added this contingency even though "Dr. Luce

3   is not a WARMC employee and WARMC has no control over [him]."

4   WARMC's Mot. to Enforce (doc. 25) at 2, ¶ 9.

5       Despite the purported agreement of February 20, 2007, and

6   even though WARMC did submit to personal jurisdiction in the

7   Nevada state court action,[6] plaintiffs have not dismissed this

8   action as against WARMC.  Consequently, WARMC is seeking a court

9   "order enforcing Plaintiffs' counsel's agreement to dismiss this

10   case as against [it]."  <u>Id.</u> at 2.

11       Plaintiffs' counsel depicts the circumstances surrounding

12   this purported agreement quite differently.  He responds:

13   "[T]here simply was no agreement to dismiss WARMC[;]" and WARMC's

14   Arizona counsel "misunderstood" their conversation regarding the

15   possibility of dismissing this action if WARMC would consent to

16   jurisdiction in Nevada.  Resp. (doc. 29) at 1.  Contrary to how

17   attorney Brooksby recalls their conversation, attorney Wright

18   recalls that there was an additional "contingency" to dismissal.

19   Not only would WARMC have to agree to submit to jurisdiction in

20   Nevada, but Dr. Luce would have to agree to jurisdiction there as

21   well.  <u>Id.</u> at 1-2.  When Dr. Luce would not so agree, attorney

22   Wright advised WARMC that he "would not be able to work out the

23   proposal to dismiss this action as to WARMC."  Aff. of H. Micheal

24   Wright (May 3, 2007) (doc. 29-2) at 2.

25

26         [6]    Based upon the supposed February 20, 2007, agreement, WARMC's Nevada
27   counsel entered a general appearance in the Nevada state court action.  Mot.
(doc. 25), exh. B thereto (Declaration of Michael A. Hagemeyer (April 28, 2007)
28   at 1, ¶ 2.  Prior to that "agreement," WARMC's Nevada counsel had only entered
a special appearance in that action.  <u>Id.</u>

1    In its reply, WARMC is adamant that attorney Wright's
2  "representations" to it regarding dismissal in exchange for
3  submitting to jurisdiction in Nevada were "unequivocal and
4  without contingency[.]" Reply (doc. 32) at 3.  According to Ms.
5  Brooksby,  this issue was not the subject of ongoing
6  negotiations; nor was it presented, as plaintiffs now suggest, as
7  a "propos[al][.]" Id.  To support its view of events, WARMC notes
8  that at the February 26, 2007, scheduling conference plaintiffs'
9  counsel, Mr. Wright, indicated that he and Ms. Brooksby had "been
10 communicating about the issue of whether [WARMC] would agree to
11 waive any contest of jurisdiction in Nevada, . . . , so that the
12 matter against [WARMC] here need not proceed." Id., exh. A (doc.
13 32-2) thereto at 3-4.  WARMC is quick to point out that at that
14 time attorney Wright did not indicate to the court that the
15 potential agreement was somehow contingent upon whether Dr. Luce
16 also would agree to jurisdiction in Nevada.

17    At least in terms of judicial economy, at first glance
18 WARMC's position that this action should proceed in one forum
19 rather than two has some appeal.  On the other hand, WARMC cites
20 to no case law to support its motion to enforce the purported
21 unwritten "agreement" between it and plaintiffs.  Indeed WARMC
22 does not even indicate which Federal Rule of Civil Procedure
23 forms the basis for this motion.[7]  Accordingly, because WARMC has

24

25        [7]    Assuming for the sake of argument that WARMC is seeking summary
   judgment pursuant to Fed. R. Civ. P. 56, obviously the court would have to deny
26 this motion because there are genuine issues of material fact as to the existence
   of an agreement in the first place, much less the terms of such agreement.  See,
27 e.g. Newtown, Inc. v. Top Heavy Clothing Co., Inc., 2006 WL 681039, at *3
   (W.D.Wash. 2006) (denying motion for partial summary judgment where "a material
   issue of fact exist[ed] regarding whether the parties had a binding
28 agreement[]"); Frontier Ford v. Technical Chemical Co., 1997 WL 266778, at *3

not, as LRCiv 7.2(b) requires, "set[] forth the points and
authorities relied upon in support of [its] motion[,]" the court
denies this motion to enforce the alleged agreement to dismiss.

### III.   Consolidation

Because WARMC has not prevailed on either of its motions to
dismiss, the court, must, necessarily, consider plaintiffs'
motion to consolidate the present action with the second filed
federal court action, Lacombe v. Luce, 3:06-CV-02127-SMM
("Lacombe II").

There is no indication in their motion, but presumably
plaintiffs are relying upon Fed. R. Civ. P. 42(a) and LRCiv 42.1
as the bases for consolidation.   The former Rule states in
relevant part:   "When actions involving a common question of law
or fact are pending before the court, . . . ; it may order all
the actions consolidated[.]"   Fed. R. Civ. 42(a).   In a similar
vein, LRCiv 42.1(a)(1) provides in relevant part as follows:

> Whenever two or more cases are pending before
> different Judges and any party believes that
> such cases (A) arise from substantially the same
> transaction or event; (B) involve substantially
> the same parties or property; . . . ; (D)
> calls for determination of substantially the
> same question of law; or (E) for any other reason
> would entail substantial duplication of labor if
> heard by different Judges, any party may file a
> motion to transfer the case or cases involved to a
> single Judge.

LRCiv 42.1(a)(1).   "[C]onsolidation is within the broad
discretion of the district court." Washington v. Daley, 173 F.3d

---

(N.D.Cal. 1997) (denying summary judgment on breach of contract claims because
of factual disputes as to "[t]he existence and terms of an oral agreement[]").

1158, 1169 n. 13 (9th Cir. 1999) (internal quotation marks and citation omitted).

Not only did plaintiffs fail to cite to the relevant Rules, they also failed to "set[ ]forth the points and authorities" which would support their motion.  See LRCiv 7.2(b).  Likewise, plaintiffs assert that Lacombe I and Lacombe II "involve related parties and arose under the same circumstances, and [so] consolidation would promote judicial economy and avoid confusion."  Pl. Mot. (doc. 24) at 2.  Without explication, however,  and in the absence of any supporting case law, the court is unable to exercise its discretion in any meaningful way at this juncture.  This inability is exacerbated by the fact that, understandably,[8] both WARMC and Dr. Luce requested that the court defer resolving the consolidation issue until a ruling on the motions to dismiss.  WARMC Resp. (doc. 27) at 3; Luce Resp. (doc. 28) at 1.  Consequently, the court does not have the benefit of knowing their respective views regarding consolidation.  In light of the foregoing, the court cannot, as it must, "evaluate[]"  Lacombe I and Lacombe II on their "own facts with close attention to whether the anticipated benefits of a consolidated complaint outweigh potential prejudice to the parties."  See Burnett v. Rowzee, 2007 WL 4191991, at *2 (C.D.Cal. 2007) (internal quotation marks and citation omitted).

Consideration of potential prejudice is especially important here given that at one point Dr. Luce was a defendant in this action, but then plaintiffs entered a notice of voluntary

---

[8]     Neither could foresee the manner in which this litigation would unfold.

- 15 -

1    dismissal as against him.  <u>See</u> Notice of Vol. Dismissal (doc. 6).

2    Finally, the court observes that because it does not have the

3    benefit of full briefing, it is uncertain as to which of the

4    three forms of "consolidation" plaintiffs are contemplating: "(1)

5    when several actions are stayed while one is tried, and the

6    judgment in the case tried will be conclusive as to the others;

7    (2) when several actions are combined and lose their separate

8    identities, becoming a single action with a single judgment

9    entered; and (3) when several actions are tried together, but

10   each suit retains its separate character, with separate judgments

11   entered.'"  <u>See</u> <u>Kemper Sports Management, Inc. V. Westport</u>

12   <u>Investment, LLC</u>, 2007 WL 4219355, at *3 (W.D.Wash. 2007)

13   (quoting, *inter alia*, <u>Schnabel v. Lui</u>, 302 F.3d 1023, 1035 (9th

14   Cir. 2002)).  For all of these reasons, the court denies

15   plaintiffs' amended motion to consolidate (doc. 24) without

16   prejudice to renew.

17                          ***Conclussion***

18        As fully discussed herein, IT IS ORDERED that defendant

19   WARMC's motion to dismiss plaintiffs' second amended complaint

20   (doc. 41) is DENIED;

21        IT IS FURTHER ORDERED that defendant WARMC's motion to

22   enforce "agreement" to dismiss (doc. 25) is DENIED; and

23        IT IS FINALLY ORDERED that plaintiffs' motion to consolidate

24   is DENIED without prejudice to renew.

25        DATED this 22nd day of January, 2008

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12    _____
      Robert C. Broomfield
13    Senior United States District Judge

14

15

16

17

18

19

20   copies to all counsel of record

21

22

23

24

25

26

27

28