**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carla M. Lacombe, individually and as Administrator for the Estate of David Nichols, deceased; Donald A. Nichols, father of David Nichols; Nancy Nichols, mother of David Nichols,<br><br>    Plaintiffs<br>vs.<br><br>Bullhead City Hospital Corp., a Tennessee corporation doing business in Arizona as Western Arizona Regional Medical Center,<br><br>    Defendant. | No. CIV 06-2037-PHX-RCB<br><br>O R D E R |

Currently pending before the court in this medical malpractice action is a motion for summary judgment pursuant to Fed. R. Civ. P. 56 by defendant, Bullhead City Hospital, a Tennessee corporation doing business in Arizona as Western Arizona Regional Medical Center ("WARMC") (doc. 49).[1]  WARMC is moving for summary judgment on the narrow issue of proximate cause, arguing that "no reasonable jury could conclude that any act by [it] caused" the death of plaintiffs' decedent, David Nichols.  Mot. (doc. 49) at 1.  Summary judgment is improper, plaintiffs respond, because they have

---

[1] Finding oral argument unnecessary, the court denies WARMC's request for same.

produced expert opinion which contradicts WARMC's theory as to the cause of death. Thus, from plaintiffs' standpoint, there is a genuine issue of material fact rendering summary judgment improper. For the reasons set forth below, the court finds that WARMC has not met its initial burden of showing the absence of a genuine issue of material fact. Therefore, the court must deny WARMC's summary judgment motion.

### *Background*

Even though, as the SAC alleges, penicillin was "contraindicat[ed]" given Mr. Nichols's overall medical history, including a "previous anaphylactic reaction to penicillin[,]" while at WARMC, "physicians ordered I.V. administration of Primaxin." SAC (doc. 40) at 3, ¶¶ 11; 13; and 14. According to the SAC, Primaxin is a "broad spectrum antibiotic which is in the same general class as penicillin." Id. at 3, ¶ 14. As the SAC describes it, "Mr. Nichols' condition deteriorated into full respiratory decompensation, secondary to reaction from Primaxin, and he died." Id. at 3, ¶ 15. The SAC further alleges that "[t]he administration of Primaxin to Mr. Nichols in the face of his prior anaphylactic reaction to penicillin, his known allergy to penicillin and his subsequent reaction to same, constituted medical negligence[.]" Id. at 3, ¶ 17. "As a proximate result" of that negligence, the SAC alleges that Mr. Nichols died on September 3, 2004. See id. at 3, ¶15; and at 4, ¶ 22.

Dr. Arthur DelRosario, a physician licensed in Nevada and "board certified in clinical and endemic pathology," with a sub-specialty in cytopathology, performed an autopsy on Mr. Nichols on September 5, 2004. WARMC's Separate Statement of Facts Supporting

its Motion for Summary Judgment ("Def. SOF") (doc. 50) at 2, ¶¶ 5-7 (citations omitted). Following that autopsy, on September 30, 2004, Dr. DelRosario prepared an autopsy report, id., exh. 3 thereto, which pursuant to court order was filed under seal. Doc. 54. "The major autopsy findings[,]" according to Dr. DelRosario, "include pulmonary decongestion and edema, and cardiomegaly with left ventricular hypertrophy." SOF (doc. 50), exh. 3 thereto at 4; see also SOF (doc. 50) at 2, ¶ 8 (citation omitted).

During his deposition, Dr. DelRosario opined that "hypertension . . . caused the enlargement of [Mr. Nichols'] heart[.]" Id. at 2, ¶ 9 (citing exh. 2 thereto at 24:2-4). In discounting the possibility that Mr. Nichols' "death resulted in something relating to his penicillin allergy[,]" Dr. DelRosario further explained that in addition to containing "a lot of fluid[,]" Mr. Nichols' lungs had "a lot of pigment-latent microphages[.]" Id., exh. 2 thereto at 23:17-18. Those factors, along with what Dr. DelRosario described as Mr. Nichols' "enlarged" heart contributed to the doctor's opinion that, in lay terms, heart failure was the cause of Mr. Nichols' death. Dr. DelRosario further opined that if Mr. Nichols had had anaphylactic shock, there would have been "a so-called capillary leak[,]" making "all parts of the body edematous[,]" which Dr. DelRosario testified he did not "seem to have seen" in Mr. Nichols. Id. at 27:11-17.

Plaintiffs strongly disagree with Dr. DelRosario's conclusion as to the cause of Mr. Nichols' death. They postulate that Mr. Nichols died as a result of an anaphylactic reaction to the Primaxin. Dr. DelRosario was specifically asked about that theory at his deposition: "[H]ow much percentagewise [sic] would you give

to saying that the cause of death was related to anaphylactic shock based on your report . . . on a 1-to-100 scale?" Id., exh. 2 thereto at 27:1-4.  He responded:  "It's extremely low[;] I would say, lower than less than one percent." Id. at 27:7-8.

Contrary to the dictates of LRCiv 56.1(b), plaintiffs did not file a controverting statement of facts.  Nor, as that Rule also requires, did plaintiffs file a statement setting forth "any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party." Id. Instead, along with their response to WARMC's summary judgment motion, plaintiffs filed an affidavit from Dr. Hugh E. Wilson, who is board certified by the American Board of Pathology in Anatomical and Clinical Pathology, and his curriculum vitae.  Doc. 56-2 at 1. In his affidavit Dr. Wilson criticizes Dr. DelRosario's autopsy report, and concludes by opining that "the cause of death would appear to be complete cardiorespiratory arrest secondary to anaphylactic reaction."  Wilson Aff. (doc. 56-2), at 7, ¶ 17(6). Plaintiffs argue Dr. Wilson's opinions as set forth in his affidavit create a genuine issue of material fact as to proximate cause.  Therefore, the court should deny WARMC's summary judgment motion and allow this case to proceed to trial.

WARMC's response is twofold.  First, it counters that because plaintiffs did not specifically controvert WARMC's SOF, as LRCiv 56.1(b) requires, that SOF is deemed admitted, thus entitling WARMC to summary judgment.  Second, Dr. Wilson's affidavit is insufficient in any event to defeat summary judgment because it merely "critiqu[es] Dr. DelRosario's autopsy without specifically controverting [WARMC's] facts[.]" See Reply (doc. 57) at 3.  WARMC

further challenges Dr. Wilson's affidavit as speculative because although he avers that tissue and/or blood samples "might have been helpful in establishing a diagnosis of anaphylaxis[,]" he did not take or review any such samples from Mr. Nichols. Wilson Aff. (doc. 56-2) at 4-5, ¶ 10. Therefore, WARMC reasons, Dr. Wilson's "speculation of what the tissues and samples could have shown is insufficient to prove causation[.]" Reply (doc. 57) at 4. As will be seen, neither of these reasons justify granting summary judgment on this record.

### *Discussion*

### I.  *Summary Judgment Standards*

Pursuant to Fed.R.Civ.P. 56(c), a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." It is beyond dispute that "[t]he moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact." Horphag Research Ltd. v. Garcia, 475 F.3d 1029, 1035 (9th Cir. 2007) (citation omitted). "The criteria of 'genuineness' and materiality' are distinct requirements." Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir.1996 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The requirement that an issue be 'genuine relates to the quantum of evidence the plaintiff must produce to defeat the defendant's motion for summary judgment." Id. "There must be sufficient evidence 'that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson, 477 U.S. at 248). As to

-5-

materiality, the substantive law will identify which facts are material." Anderson, 477 U.S. at 248.  Here, as will be seen, the law of Arizona is the substantive law.

"Once the moving party meets its initial burden, . . . , the burden shifts to the nonmoving party to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." Id. (internal quotation marks and citations omitted).  This "[e]vidence must be concrete and cannot rely on 'mere speculation, conjecture, or fantasy.'" Bates v. Clark County, 2006 WL 3308214, at * 2 (D.Nev. Nov. 13, 2006) (quoting O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th Cir.1986)).  Similarly, "a mere 'scintilla' of evidence" is not sufficient "to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some significant probative evidence tending to support the complaint." Fazio v. City & County of San Francisco, 125 F.3d 1328, 1331 (9th Cir.1997) (quoting Anderson, 477 U.S. at 249, 252).  Thus, in opposing a summary judgment motion it is not enough to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(citations omitted).

By the same token though, when assessing the record to determine whether there is a "genuine issue for trial the court must "view the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in his favor." Horphag, 475 F.3d at 1035 (citation omitted). "Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the

-6-

1  inference may be drawn. Yang v. Peoples Benefit Ins. Co., 2007 WL
2  1555749, at *7 (E.D.Cal.2007) (citations omitted).  Finally, the
3  court may not make credibility determinations; nor may it weigh
4  conflicting evidence. See Anderson, 477 U.S. at 255.  With these
5  principles firmly in mind, the court has carefully reviewed the
6  record before it on this motion.

### *II.  LRCiv 56.1*

LRCiv 56.1 expressly requires a party opposing summary judgment to, among other things, provide:

> a statement, . . . setting forth . . . for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed[.]

LRCiv 56.1(b).  That Rule further provides that "[e]ach numbered paragraph of the statement of facts set forth in the moving party's separate statement of facts *shall, unless otherwise ordered*, be deemed admitted for purposes of the motion for summary judgment if not specifically controverted by a correspondingly numbered paragraph in the opposing party's separate statement of facts."  Id. (emphasis added).

As earlier noted, plaintiffs did not comply with Local Rule 56.1(b) in any respect.  The court therefore could deem admitted WARMC's entire SOF.  "However, given the phrase, 'unless otherwise ordered,' the court finds that it has the discretion, but is not required, to deem the uncontroverted facts admitted."  See Huynh v. J.P. Morgan Chase & Co., 2008 WL 2789532, at *5 (D.Ariz. July 17, 2008) (internal quotation marks and citation omitted).  In the

exercise of that discretion, because the issue as WARMC frames it is so narrow - proximate cause - as will soon become evident, the court had no difficulty discerning the disputed facts. Accordingly, it will not deem any of WARMC's facts admitted due to plaintiffs' failure to comply with LRCiv 56.1(b).

Obviously it would have been preferable for plaintiff to have fully complied with LRCiv 56.1(b); and the court hastens to add that in the future in this case it will not be so lenient.  As just stated, however, the disputed facts are easily discernible. Furthermore, proceeding in this way is in keeping with the Ninth Circuit's stated preference for resolving summary judgment motions on the merits, rather than "turn[ing] the summary judgment rule into a mere sanction for noncompliance with local rules."  See Martinez v. Stanford, 323 F.3d 1178, 1182 (9th Cir. 2003).

### III.  *Medical Malpractice*

Under the Erie doctrine, this court sitting in diversity jurisdiction must apply state substantive law and federal procedural law.  Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996).  Therefore, the court must look to the law of Arizona to determine the elements of plaintiffs' medical malpractice cause of action.  Pursuant to A.R.S. § 12-563 the "[n]ecessary elements of proof" for such a cause of action are a showing that:

> 1. [t]he health care provider failed to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class to which he belongs within the state acting in the same or similar circumstances[;] [and]
>
> 2. [s]uch failure was a proximate cause of the injury.

- 8 -

A.R.S. § 12-563(1)-(2) (West 2003). Only the second element - proximate cause - is at issue on this motion. As is readily apparent by now, WARMC maintains that the cause of death was heart failure, whereas plaintiffs assert that it was an anaphylactic reaction to Primaxin.

In challenging the sufficiency of plaintiffs' evidence on this motion, the court agrees with WARMC that if Dr. Wilson's affidavit was limited to criticizing Dr. DelRosario's methodology in performing the autopsy, and hence the conclusions he reached, in all likelihood, it would be insufficient to survive this summary judgment motion on the issue of causation. WARMC overlooks the fact, however, that in his opposing affidavit Dr. Wilson went one step farther - a critical step, as it turns out, in terms of this motion. Not only does Dr. Wilson outline the reasons why the autopsy does not support a diagnosis of heart failure, but he goes on to explain why he "concur[s] with Drs. Russo and Budny that to a reasonable degree of medical certainty, the cause of death would appear to be complete cardiorespiratory arrest secondary to anaphylactic reaction." Wilson Aff. (doc. 56-2), at 7, ¶ 17(6).

Based upon his review of certain medical records, the autopsy report prepared by Dr. DelRosario and his deposition, in his opposing affidavit Dr. Wilson explicates the reasons why "[i]t is far more probable than not, that [Mr. Nichols'] died of something other than heart failure." Id. at 7, ¶ 17(1). Among those reasons is that "[n]either the autopsy on Mr. Nichols nor his clinical course during his terminal admission support a diagnosis of heart failure." Id. Second, "[t]he enlargement of Mr. Nichols' heart is not striking and is consistent with his past medical history of

- 9 -

hypertension." Id. at 7, ¶ 17(2). Additionally, "[t]he congestion and edema of the lungs at the time of autopsy and the severe reactive airways disease noted by Dr. Patel [the Nichols' family doctor] are consistent with a diagnosis of anaphylaxis." Id. at 7, ¶ 17(5). Lastly, before rendering his ultimate conclusion on the cause of death, Dr. Wilson averred that "[g]iven the lack of a specific anatomical cause of death at autopsy, the cause of Mr. Nichols' death is best determined on clinical grounds." Id. at 7, ¶ 17(6). Dr. Wilson continued: "The clinical history is most consistent with an anaphylactic reaction to beta lactam antibiotic and is also supported by the wet heavy lungs described at autopsy." Id.

The court starts its assessment of this record from the well-settled proposition that "[g]enerally, proximate cause is a question of fact for the jury." Petolicchio v. Santa Cruz County Fair & Rodeo Ass'n, Inc., 177 Ariz. 256, 262, 866 P.2d 1343, 1348 (1994) (citation omitted). The court relies on a related and equally well-settled proposition that "[a] plaintiff need only present probable facts from which the causal relationship may be inferred." Souza v. Fred Carries Contracts, Inc., 191 Ariz. 247, 253, 955 P.2d 3, 9 (1997) (internal quotation marks and citation omitted). By the same token though, the court "may properly decide proximate cause if, after reviewing the facts, there is *no* reasonable chance or likelihood that the conclusions of reasonable persons would differ." Petolicchio, 177 Ariz. at 262, 866 P.2d at 1348 (internal quotation marks and citation omitted) (emphasis added).

Applying these principles, as well as the Supreme Court's

summary judgment framework set forth above, to the record as presently constituted, persuades the court that WARMC is not entitled to summary judgment on the issue of proximate cause. Through Dr. Wilson's affidavit, and drawing as it must all reasonable inferences therefrom in plaintiffs' favor, the court finds a genuine issue of material fact as to causation here. Succinctly put, the evidence now before the court "presents a sufficient disagreement to require submission to a jury[.]" See Anderson, 477 U.S. at 251-52.  It is not "so one-sided that one party must prevail as a matter of law."  Id.

Accordingly, for the reasons set forth herein,

IT IS ORDERED denying the motion for summary judgment by defendant Bullhead City Hospital, a Tennessee corporation doing business in Arizona as Western Arizona Regional Medical Center (doc. 49).

IT IS FURTHER ORDERED that, in light of the somewhat unusual procedural posture of this case in which no effective scheduling order pursuant to Rule 16 has been entered, a status conference is hereby set for January 19, 2009 at 1:30 a.m. during which such orders as may be necessary, including a potential pre-trial conference and trial date, will be set.

DATED this 8th day of December, 2008.

_____
Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record