**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carla M. Lacombe, individually and as Administrator for the Estate of David Nichols, deceased; Donald A. Nichols, father of David Nichols; Nancy Nichols, mother of David Nichols,<br>        Plaintiffs<br>        vs.<br>Bullhead City Hospital Corp., a Tennessee corporation doing business in Arizona as Western Arizona Regional Medical Center,<br>        Defendant. | No. CIV 06-2037-PHX-RCB<br><br>O R D E R |

    David Nichols died on September 3, 2004, eleven days after he was seen at defendant's facility, Bullhead City Hospital Corporation, a Tennessee corporation doing business in Arizona as Western Arizona Regional Medical Center ("WARMC"). Nearly three years ago, on August 21, 2006, plaintiffs filed this medical malpractice action arising out of Mr. Nichols' death. Prior to the

filing of this action, plaintiffs had filed an action in Nevada state court against WARMC, among others.  Claiming that plaintiffs have allowed this action to "languish[][,]" WARMC, the only remaining defendant, is moving to dismiss for failure to prosecute pursuant to Fed. R. Civ. P. 41(b).  Mot. (doc. 62) at 3:20.  Plaintiffs oppose dismissal and "countermove for a Stay . . . pending the outcome of the Nevada . . . action."  Resp. (doc. 64) at 1:20-21.

### *Background*

Roughly six weeks after the filing of their Nevada state court action, plaintiffs filed the present action.  Plaintiffs filed this action shortly before the September 3, 2006, expiration of the two-year statute of limitations.[1]  Plaintiffs candidly admit that they filed this action because WARMC challenged jurisdiction in Nevada.  Resp. (doc. 64) at 2.  The Nevada action has proceeded apace; it is still pending and continues to be prosecuted.  During the Nevada litigation, the court found that it has jurisdiction over WARMC  - a ruling which WARMC intends to appeal.  Id.  In the meantime, although defendants made various motions herein, plaintiffs have done nothing affirmative to prosecute this action.

Basically, WARMC argues that dismissal for failure to prosecute is warranted because witnesses are unavailable; memories have gone stale; and it is incurring unspecified "needless expenses."  Mot. (doc. 62) at 6:2.  Plaintiffs oppose dismissal, primarily because of WARMC's "refusal to submit to Nevada

---

[1] A.R.S. § 12-542 provides that the statute of limitations for personal injury, including medical malpractice and wrongful death, is two years.  See A.R.S. § 12-542(1) and (2) (West 2003).

-2-

jurisdiction[.]" Resp. (doc. 64) at 2. Plaintiffs posit that if WARMC ultimately prevails on the jurisdiction issue in Nevada, and that action is dismissed, they will be left without a remedy unless they can proceed against WARMC in this federal action. Hence, they are seeking a stay "pending the outcome of the Nevada . . . action." Id. at 1:20-21.

"Alternatively," if the court declines to grant a stay, plaintiffs "are ready to proceed and will confer with [WARMC] for a schedule of discovery deadlines and pretrial proceedings." Id. at 2. Asserting that a stay is "the most drastic alternative to the defense[,]" WARMC opposes that request for alternative relief, and insists that dismissal will "provide[] the least risk of prejudice to all the parties[.]" Reply (doc. 65) at 4:17-18.

## *Discussion*[2]

### *I. Rule 41(b) Dismissal*

Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss an action when, among other reasons, "the plaintiff fails to prosecute[.]" Fed. R. Civ. P. 41(b). A district court's authority to dismiss under that rule is well-settled. See Link v. Wabash R.R. Co., 370 U.S. 626, 629-30, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). Indeed, the Supreme Court has recognized that "[t]he power to invoke this sanction is necessary in order to

---

[2] WARMC requests oral argument, mot. (doc. 62) at 1, but plaintiffs do not. Given the court's familiarity with the rather convoluted history of this action, the straightforward issues presented herein, and the fact that those issues have been fully briefed, oral argument will not aid the court's decisional process. See Fed.R.Civ.P. 78; Lake at Las Vegas Investors Group, Inc. v. Pac. Dev. Malibu Corp., 933 F.2d 724, 729 (9th Cir.1991); Partridge v. Reich, 141 F.3d 920, 926 (9th Cir. 1998). Therefore, the court denies WARMC's request for oral argument.

prevent undue delays in the disposition of pending cases and to avoid congestion in the calendar of the District Courts." Id. at 629-630.

At the same time, however, "[d]ismissal for failure to prosecute is a 'harsh penalty' and 'should be imposed only in extreme circumstances.[']" Fidelity National Financial, Inc. v. Friedman, 2009 WL 1160234, at *4 (C.D.Cal. April 27, 2009 (quoting Johnson v. United States Dep't of Treasury, 939 F.2d 820, 825 (9th Cir. 1991)). Thus, in resolving a motion to dismiss on that basis, a court must weigh the following somewhat conflicting factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage the docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." In re Phenylpropanolamine (PPA) Prod. Liability Litig., 460 F.3d 1217, 1226 (9th Cir. 2006) (internal quotation marks and citations omitted). "This multi-factor test . . . is not 'a mechanical means of determining what [] sanction is just.'" Wade v. Ratella, 407 F.Supp.2d 1196, 1207 (S.D.Cal. 2005) (quoting Valley Engineers Inc. v. Electric Engineering Co., 158 F.3d 1051, 1057 (9th Cir. 1998)). Rather, these factors are "a disjunctive balancing test, so not all five factors must support dismissal." Grubb v. Hernandez, 2009 WL 1357411, at *3 (C.D.Cal. May 1, 2009) (citing Valley Engineers, 158 F.3d at 1057). Consistent with the foregoing, the Ninth Circuit has instructed that "[t]hese factors are not a series of conditions precedent before the judge can do anything, but a way for a district judge to think about what to do." PPA Prod. Liab. Litig., 460 F.3d at 1226

(internal quotation marks and citation omitted). Accordingly, the Ninth Circuit has indicated that it "may affirm a dismissal where *at least* four factors support dismissal . . . . or where at least three facts *strongly* support dismissal." Yourish v. California Amplifier, 191 F.3d 9893, 990 (9th Cir. 1999) (internal quotation marks and citation omitted) (emphasis added).

Not surprisingly, WARMC contends that the five factors enumerated above all favor dismissal here. Plaintiffs recognize that these factors frame the court's inquiry, but they urge a different outcome. Without citing any authority, plaintiffs seek a stay of this action because in their view a stay will serve the five factors previously identified. Plaintiffs posit that a stay pending the outcome of the Nevada action may render this action moot. They further posit that no additional costs will be incurred in that "[t]he discovery now being conducted in Nevada can be used in this action as well[.]" Resp. (doc. 64) at 2.

WARMC strenuously opposes a stay, describing it as "the most drastic alternative to the defense." Reply (doc. 65) at 4:17-18. Although WARMC contends that it would be prejudiced by having to begin discovery in this case now, it further contends that such prejudice "is nothing compared to [what] it would endure if this case were stayed until years from now [-] after resolution of the Nevada case at the trial court . . . and [WARMC's] appeal of the jurisdiction[] issue." Id. at 4:19-20 - 5:1-2.

WARMC also takes the opposite view from plaintiffs in terms of the use to which the Nevada discovery can be put. WARMC maintains that "[t]he three . . . years of discovery" in Nevada "will have to begin in Arizona from scratch." Id. at 2:23-24. This perceived

necessity of starting "from scratch" arises from the fact that WARMC's Arizona counsel has not participated in the Nevada action. Furthermore, WARMC notes that any discovery here will have to be done in accordance with the Federal Rules of Civil Procedure, as opposed to Nevada state law. For these reasons, WARMC replies that "[t]he only reasonable course of action . . . is to dismiss this federal case." Id. at 2:8-10 (emphasis omitted).

"[A] district court is not required to make specific findings on each of the essential factors[]" pertaining to dismissal for failure to prosecute. See In re Eisen, 31 F.3d 1447, 1451 (9th Cir. 1994) (citation omitted). Nevertheless, because such findings are "beneficial to the reviewing court[,]" and because the court believes that the parties should have the benefit of the court's reasoning, it will evaluate each of the enumerated factors in turn. See id.

### A. Expeditious Resolution

"[T]he public has an overriding interest in securing 'the just, speedy, and inexpensive determination of every action.'" PPA Prod. Liab. Litig., 460 F.3d at 1227 (quoting Fed.R.Civ.P. 1). "Orderly and expeditious resolution of disputes is of great importance to the rule of law." Id. Accordingly, "[t]he public's interest in expeditious resolution of litigation *always* favors dismissal." Yourish, 191 F.3d at 990 (emphasis added). Given plaintiffs' failure to prosecute this action, despite its pendency for almost three years, this factor weighs in favor of dismissal, although not strongly.

### B. Docket Management

"District courts have an inherent power to control their

dockets." PPA Prod. Liab. Litig., 460 F.2d at 1227 (internal quotation marks and citation omitted). Acknowledging that inherent power, the Ninth Circuit has recognized that "[t]he trial judge is in the best position to determine whether the delay in a particular case interferes with docket management and the public interest." Pagtalunan v. Galaza, 291 F.3d 639, 642 (9th Cir. 2002) (citation omitted); see also Yourish, 191 F.3d at 991 (district courts occupy a "superior position to evaluate the effects of delay" on their own dockets). "This factor is usually reviewed in conjunction with the public's interest in expeditious resolution and, as with th[at] first factor, [the Ninth Circuit] give[s] deference to the district court since it knows when its docket may become unmanageable." PPA Prod. Liab. Litig., 460 F.2d at 1227 (internal quotation marks and citation omitted).

The court is well aware that this action has been pending for more than two and a half years with no discovery having been conducted. This is not a situation, however, where plaintiffs have sat idly by and done absolutely nothing during the pendency of this action. They have complied with this court's Rule 16 scheduling conference order and have actively participated in a scheduling conference and two status conferences. At one of those status conferences, due in part to plaintiffs' cooperation, the number of defendants were significantly reduced. See Doc. 21. Further, plaintiffs filed a motion to consolidate in April, 2007. Moreover, nothing precluded WARMC from proceeding with discovery, even though plaintiffs did not.

This action has "consumed some of the court's time that could have been devoted to other cases on [its] docket." See Pagtalunan,

291 F.3d at 642. Nonetheless, because plaintiffs have complied with the court's orders, including timely filing an amended complaint, plaintiffs' conduct is not tantamount to an impermissible delay tactic. Nor has the court's docket been rendered unmanageable by plaintiffs' failure to actively pursue this action. Thus, the court finds that this second factor weighs against dismissal.

***C. Risk of Prejudice to Defendant***

Typically, the Ninth Circuit's "cases have tended to focus on the factors of prejudice and delay." Nealey v. Transportation Maritima Mexicana, SA,, 662 F.2d 1275, 1279 (9th Cir. 1980) (footnote omitted). These factors are "often integrally related[]" and hence cannot be "viewed in isolation." Id. at 1280. Given this interplay, "[t]he law . . . presumes prejudice from unreasonable delay." PPA Prod. Liab. Litig., 460 F.2d at 1227 (citations omitted). However, due to the "competing concern" of "disposing of cases on their merits[,]" the Nealey Court instructed: "The pertinent question for the district court, . . ., is not simply whether there has been any, but rather whether there has been *sufficient* delay or prejudice to justify dismissal of plaintiff's case." Nealey, 662 F.2d at 1280 (emphasis added).

The Ninth Circuit has adopted a burden shifting approach to prejudice. Under that approach, first it is "incumbent upon the" party moving for dismissal under Rule 41(b) "to come forth with some facts indicating delay on the part of the plaintiff." Id. (citation omitted). After that, the court must consider the proffered reasons for the delay because "[e]ven where a plaintiff has failed to do what he might have done earlier, he may have an

explanation that excuses or justifies his failure." Id.

"[W]here a plaintiff has come forth with an excuse for his delay that is anything but frivolous, the burden of production shifts to the defendant to show *at least some actual prejudice*." Id. at 1281 (emphasis added). Once the defendant does that, "the plaintiff must then persuade the court that such claims of prejudice are either illusory or relatively insignificant when compared to the force of his excuse." Id. "In this circumstance prejudice, delay and excuse all inform the district court's discretion." PPA Prod. Liab. Litig., 460 F.2d at 1228. Given that "the district court is in the best position to assess prejudice[,]" the Ninth Circuit has recognized that the district court's "finding of prejudice deserves substantial deference[.] Id. (internal quotation marks and citations omitted).

"Prejudice normally consists of loss of evidence and memory[.]" Id. (citations omitted). "[A] district court in the exercise of its discretion should consider whether such losses have occurred and if so, whether they are significant [since] [n]ot every loss, and particularly not every loss of memory, will prejudice the defense of a case." Eisen, 31 F.3d at 1453 (internal quotation marks and citation omitted). "Whether the prejudice is significant will depend on whether the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." Id. (internal quotation marks and citation omitted).

Additionally, prejudice may "consist of costs or burdens of litigation, although it may not consist of the mere pendency of the lawsuit itself[.]" PPA Prod. Liab. Litig., 460 F.2d at 1228

(citations omitted). That is so because "[l]imited delays and the prejudice to a defendant from the pendency of a lawsuit are realities of the system that have to be accepted, provided the prejudice is not compounded by unreasonable delays." Pagtalunan, 291 F.3d at 642 (internal quotation marks and citations omitted).

Especially given that the movant's initial burden "will rarely be difficult[,]" the court finds that WARMC has met its burden of showing delay in that plaintiffs have done almost nothing affirmative to advance this litigation. See Nealey, 662 F.2d at 1280. For example, as already noted, plaintiffs have conducted no discovery, despite the pendency of this action for over two and a half years.

Because WARMC has met its initial burden of showing delay, the court must determine whether plaintiffs have "come forth with an excuse for [their] delay that is *anything but frivolous*[.]" See id. at 1281 (emphasis added). Plaintiffs do not frame their opposition in terms of an excuse for delay. Despite that, their response easily can be read as asserting that the reason for the delay is that plaintiffs are pursuing the Nevada action first. From plaintiffs' standpoint, what transpires in the Nevada action will directly impact the course this action takes. In that regard, plaintiffs stress that a settlement of that Nevada action will render this federal action moot. Resp. (doc. 64) 2:11.

Plaintiffs add that they initially filed this case because WARMC would not consent to jurisdiction in Nevada. Further, plaintiffs contend that the dismissal is not appropriate because if the Nevada court ultimately finds jurisdiction lacking, they will be without any recourse, unless they are allowed to proceed here.

Given the relatively low threshold showing required of plaintiffs at this juncture, *i.e.*, an excuse which is "anything but frivolous," the court finds that plaintiffs have met their burden of proof in that regard.

Therefore, the court must proceed to the next level of inquiry. WARMC misconceives the nature of its burden, arguing that it "will be greatly prejudiced if this case is not dismissed." Reply (doc. 62) at 6:4-5 (emphasis omitted). However, because plaintiffs' excuse for delay is not frivolous, WARMC has the burden of production which requires a showing of "at least actual prejudice[]" arising from that delay, not prejudice from denying dismissal. See Nealey, 662 F.2d at 1281. WARMC has not met that burden.

Attempting to show actual prejudice, WARMC declares that its Arizona counsel has had "no access to discovery in the Nevada case and has had no opportunity to protect [WARMC's] interests under Arizona law." Reply (doc. 62) at 6:10-12. While that may be so, the fact remains that WARMC somehow was able to obtain the deposition of Dr. Arthur Delrosario, who performed the autopsy on Mr. Nichols, as well as a copy of his autopsy report. Primarily based upon those items, WARMC previously moved for summary judgment in this action, which the court denied, finding issues of fact as to proximate cause. See Lacombe v. Bullhead City Hosp. Corp., 2008 WL 518822 (D.Ariz. Dec. 9, 2008). The foregoing significantly undermines WARMC's assertion that it has been prejudiced in this action by its inability to obtain discovery in the Nevada action. Moreover, nothing precluded WARMC from proceeding with its own discovery in this action.

WARMC's argument that it has been prejudiced due to witness unavailability and memories fading is equally misplaced. The fundamental flaw with this argument is that WARMC only generically asserts loss of memory and loss of evidence. It has not met its burden of production by showing that such losses actually occurred. Cf. Eisen, 31 F.3d at 1454 (actual prejudice shown where, *inter alia*, "one of the beneficiaries of the properties, who would have served as a witness, . . . passed away[]"). Thus, the court cannot, as it must, determine whether these claimed losses "are significant[.]" See id. at 1453 (internal quotation marks and citation omitted). Likewise, the court also is unable to determine "whether plaintiff[s'] actions [have] impair[ed] [WARMC's] ability to go to trial or threaten[ed] to interfere with the rightful decision of the case[]" based simply upon WARMC's incantation of the phrases "witness memory loss" and "loss of evidence" without more. See Eisen, 31 F.3d at 1454 (internal quotation marks and citation omitted).

Nor is WARMC's reliance upon the costs of litigation a sufficient basis for finding actual prejudice. Given WARMC's characterization of this case as "stagnant," Mot. (doc. 62) at 4:3, the court fails to see how the unspecified costs WARMC purportedly is incurring can be anything other than those associated with "the mere pendency of the lawsuit itself[.]" See PPA Prod. Liab. Litig., 460 F.3d at 1228 (citations omitted). Such costs are simply the "realities of the system," especially where, as here, there has been no showing of actual prejudice. See Pagtalunan, 291 F.3d at 642 (internal quotation marks and citations omitted).

As the foregoing demonstrates, WARMC has not met its burden of

showing actual prejudice in any form. Consequently, there is no need to proceed to the third level of inquiry under Nealey, *i.e.* whether the prejudice is illusory or relatively insignificant. Thus, as to the third factor - risk of prejudice - while there has been some delay here, at the end of the day, the court is not yet convinced that that delay has been sufficient enough to justify the harsh penalty of dismissal. That is all the more so given WARMC's failure to show actual prejudice as a result of this delay. Therefore, as with docket management, this factor too militates against dismissal.

### D. *Public Policy Favoring Decision on the Merits*

Turning to the fourth fact, the public policy favoring disposition of cases on their merits, this "weighs against dismissal, as it always does." Grubb, 2009 WL 1357411, at *3 (citing, *inter alia*, Pagtalunan, 291 F.3d at 643); see also PPA Prods. Liab. Litig., 460 F.3d at 1228 (citation omitted) (Ninth Circuit has often said that the public policy favoring disposition of cases on their merits strongly counsels against dismissal[]").

### E. *Availability of Less Drastic Sanctions*

The fifth factor also weighs against dismissal, "particularly since the court has not considered or tried less drastic alternatives to dismissal." See United Van Lines, LLC v. Edwards, 2008 WL 686840, at *3 (E.D.Cal. March 11, 2008) (citation omitted). Indeed, "[t]he district court abuses its discretion if it imposes a sanction of dismissal without first considering the impact of the sanction and the adequacy of less drastic sanctions." PPA Prods. Liab. Litig., 460 F.3d at 1228 (internal quotation marks and citations omitted).

In sum, because four of the five <u>Nealey</u> factors weigh against dismissal, the court finds that this case does not presently present the type of "extreme circumstances" which warrant the "harsh penalty" of dismissal. See <u>Johnson</u>, 939 F.2d at 825). Consequently, the court denies WARMC's motion to dismiss for failure to prosecute pursuant to Fed.R.Civ. P. 41(b).

By the same token, however, the court will not turn a blind eye to the fact that this case has been pending for nearly three years without diligent prosecution by plaintiffs. Plaintiffs' strategy in keeping this action alive, while simultaneously pursuing the Nevada state action also against WARMC, obviously is one of "hedging their bets." Plaintiffs cannot proceed in this way though to the point where it becomes prejudicial to WARMC. That point is fast approaching. Accordingly, as plaintiffs have indicated they are ready to do, the court directs them to confer with WARMC and submit a proposed scheduling order in conformity with Fed.R.Civ.P. 16. Such order shall be submitted within ten (10) days of the entry of this order. In determining the scope of any discovery, plaintiffs are advised that they will not be allowed to repeat any discovery which has already been conducted in the Nevada action. Nothing herein should be construed, however, as limiting the discovery in which WARMC decides to engage.

## *II. "Countermotion for Stay"*

As should be abundantly clear by now, the court finds no basis for staying this action pending the outcome of the Nevada action. Therefore, it denies plaintiffs' "countermotion" for such relief.

For the reasons set forth above, the court hereby ORDERS that:

(1) defendant WARMC's "Motion to Dismiss for Failure to

- 14 -

Prosecute" (doc. 62) is DENIED without prejudice;

    (2)  plaintiffs' "Countermotion for Stay" (doc. 64) is DENIED;

    (3)  the parties shall confer and within ten (10) days of
         entry of this order, they shall submit a proposed
         scheduling order in conformity with Fed.R.Civ.P. 16.
         A scheduling conference pursuant to Rule 16 is set on
         June 29, 2009, at 10:00 a.m.; and

    (4)  the parties are GRANTED leave to conduct limited
         discovery as specified herein.

    DATED this 9th day of June, 2009.

                              _____
                              Robert C. Broomfield
                              Senior United States District Judge

Copies to counsel of record

- 15 -